## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| **JAKUB MADEJ** | **CIVIL ACTION No.** |
| *Plaintiff,* | **20 cv 991 (JCH)** |
| v. | |
| | **JURY TRIAL DEMANDED** |
| **YALE UNIVERSITY, YALE HEALTH** | |
| *Defendants.* | **JULY 15, 2020** |

## COMPLAINT

Plaintiff Jakub Madej, by and through the undersigned counsel, files this Complaint against defendants Yale University and Yale Health, and respectfully alleges as follows:

## INTRODUCTION

This action arises from the fraud perpetrated by Yale University, whose senior management regularly and secretly accessed student psychiatric information collected at an on-campus clinic without patients' knowledge or consent as part of University's "enterprise risk management" program. The scheme was implemented after several students committed suicide in 2014, bringing nationwide negative publicity to Yale. Conspirators orchestrated the scheme to leave no physical trace of disclosure, and succeeded in involuntarily withdrawing tens of undergraduates designated as "reputational threats" by Yale's business judgment. Yale Health's leadership has knowingly participated in the conspiracy, exploited the false sense of security for University's self-gain, and continually turned a blind eye to moral qualms. Yale's unconscionable betrayal of trust that Yale students freely extend to the University continues to this day.

PARTIES

1. Plaintiff Jakub Madej resides in New Haven, Connecticut.

2. Yale University is a 501(c)(3) higher education corporation headquartered in New Haven, Connecticut.

3. Yale Health is a medical clinic on the Yale campus. Yale Health offers mental health and counseling services ("MH&C") for Yale students. Yale Health is located at 55 Lock St in New Haven, Connecticut.

JURISDICTION AND VENUE

4. This Court has original diversity jurisdiction over this dispute under 28 U.S.C. §1332 because:

   i. Yale and Jakub are citizens of different states;

   ii. The amount in controversy exceeds $75,000, exclusive of interest and costs.

5. This Court has personal jurisdiction over Yale because it conducts business in Connecticut.

6. Venue is proper in this district under 28 U.S.C. § 1391(b)(1) and (2) because

   i. Yale resides in this district;

   ii. The acts giving rise to this lawsuit occurred within this District.

BACKGROUND

7. Yale University operates in the business of higher education. Its business model has three main prongs:

2

      i.      Yale sells undergraduate students its education services in exchange for tuition;

     ii.      Yale pays "scholarships" to Ph.D. candidates, who perform a lion share of teaching duties that encompass the educational services mentioned above;

    iii.      Yale hires faculty, who turn a portion of each taxpayer-funded grant to the University's budget.

8.     Yale has been regarded as perhaps the most prestigious college in the country for decades.

9.     The Yale brand is widely recognized outside the United States, and the Yale education is highly desirable in Asia.

10.     At least thirty businesses in China alone offer consulting services priced at over $100,000 to help prospective students secure admission to Yale.

11.     Yale's most valuable asset is its reputation, valued in billions of dollars.

12.     Today's uncertain environment poses constant threats to Yale's reputation. Every unfavorable event, especially if publicized, threatens the University's position among its peer universities.

13.     Every college is scrambling to find ways to prevent or mitigate those risks, a task essential to long-term sustainability of their organizations.

14.     Psychological concerns are widespread among students in higher education, especially at Yale.

15.     Anxiety is the top presenting concern among college students (41.6 percent), followed by depression (36.4 percent) and relationship problems (35.8 percent), according to the American Psychological Association.

16.    Students that exhibit mental health concerns pose a discernible reputational threat to Yale University in that Yale perceives them as more likely to engender legal liability, provoke undesirable events, and give rise to negative publicity to the University.

17.    United Educators (UE) is an organization that provides liability insurance and risk management services to more than 1,600 colleges and universities throughout the United States. As one of seven "reputational risk management best practices", UE recommends establishing "a monitoring system that will give early notification to emerging reputational damage to your institution".

18.    "The mechanism for monitoring, tracking, and responding should be flexible enough to encompass unforeseen events but focused so that the institution is scanning the environment and surprises are minimal," UE writes.

19.    On or around 2014, several Yale undergraduates committed suicide, which triggered nationwide attention and an on-campus debate about the state of mental health at Yale.

20.    Faced with an unpredictable and rising risk, Yale administrators started accessing student psychiatric information from Yale Health, an on-campus clinic that offers "completely free" mental health services to all Yale students, to learn which individuals are more likely to pose a reputational threat to Yale.

21.    Yale administration has used student psychiatric information to select more "risky" students, involuntarily withdraw them "for mental health reasons", and to intimidate students who sought redress outside the University.

22. Yale administration has ensured that it leaves no written record of disclosure, thus preventing its students from ever being able to learn that their psychiatric information was accessed.

23. Upon information and belief, Yale regularly pressures students to declare in writing that their withdrawals were voluntary as a business practice to avoid legal liability from students that have been wronged.


24. Plaintiff has enrolled as an undergraduate student at Yale College in August 2016.

25. Plaintiff has been treated for depression and attention deficit disorder, and took psychotropic medication as part of his treatment.

26. In May 2018, plaintiff has been brutally stabbed in broad daylight on the streets of Johannesburg, South Africa. The muggers cut plaintiff's radial artery, and he lost nearly a liter of blood before being miraculously rescued. Plaintiffs slowly recovered over several weeks. After this incident, plaintiff exhibited symptoms of post-traumatic stress disorder (PTSD).

27. In 2018, Yale University widely advertised mental health and counseling services offered by Yale Health. Plaintiff learned about MH&C services from official materials published by the University and shared among students through email. See Exhibit A.

28. The University emphasized that information discussed with mental health counselors and psychiatrists at Yale Health is held in the strictest confidence.

29. Yale Health makes identical representations in its official materials, for example:

"Mental Health & Counseling records for Yale students are separate from other medical records, are excluded from the electronic medical record, and are kept in a locked room in Mental Health & Counseling."

"Mental Health & Counseling will not release information about a patient to anyone including Heads of College, Deans, parents, family, friends, coaches, employers, or the government without your permission."

"Everything discussed with a mental health clinician is held in strictest confidence and is not communicated to anyone without your permission, except in the rare instance of a life-threatening situation."

"Strict standards of confidentiality are always maintained."

(emphasis added)

30. Yale Health explicitly represented to plaintiff, and all other Yale students, that their "[mental health] records are not released to *anyone*—including other Yale Health clinicians or administrative personnel—without your permission" (emphasis added).

31. Yale Health stores on its website a form styled "Authorization for Release of Mental Health Record", ostensibly as a lawful mechanism to obtain permission to release students' psychiatric information to third-parties. See Exhibit B.

32. "Without receipt of this completed form parents or any other persons will not have access to your health information," Yale emphasized.

33. Relying on these representations, plaintiff scheduled an initial visit at MH&C department of Yale Health. Plaintiff was matched with a psychiatrist, and has had appointments with two psychiatrists and one therapist.

34. In January 2020, Plaintiff was involuntarily withdrawn from Yale College. Suspicious about the inner workings of Yale, he investigated Yale's practices and filed a suit, which is co-pending in this District.

35.   At all relevant times, Yale College had accessed plaintiff's psychiatric information, used them to retaliate against the plaintiff and pressure him to drop his investigation and legal action against Yale.

36.   In March 2020, Yale Health has released plaintiff's psychiatric information to Yale University senior management, who forwarded them to several third-party individuals.

37.   Later in March, Plaintiff requested a list of all disclosures of his medical information that Yale Health, or other Yale entities, have made since 2016 until that day.

38.   In response, Yale Health's Chief Privacy Officer represented that no disclosure has been made.

39.   Devoid of any shame, Yale requested that plaintiff sign a blanket disclosure permitting a release of his medical records to, essentially, everyone. See Exhibit C.

40.   Yale University continues to regularly and secretly access student psychiatric information to this day.

## COUNT I - FRAUD
(Yale University)

41.   Plaintiff incorporates the foregoing paragraphs by reference.

42.   Connecticut law makes it unlawful for any organization to knowingly make false representations of fact, or to conceal material facts, to induce action by another party, to the detriment of that party.

43. Yale University committed fraud under Connecticut law when it intentionally and falsely represented to Plaintiff that it has no means to, and would not access Plaintiff's psychiatric records without his consent.

44. At all relevant times, Yale knew that Plaintiff would trust its representations, that Plaintiff would not question Yale's representations, and that Plaintiff had no way to independently verify the truthfulness of University's statements.

45. At all relevant times, Yale intended to deceive Plaintiff that MH&C services are confidential when, in fact, Yale regularly and secretly accessed students' psychiatric records for its business purposes.

46. Yale committed fraud under Connecticut law when it failed to disclose that its management regularly accessed students' mental health records without their knowledge or consent.

47. Yale committed fraud under Connecticut law when its management accessed Plaintiff's psychiatric records without his knowledge or consent, while representing that Defendant did not access them.

48. Yale intended to use its false representations and their misrepresentations and concealments to retaliate against and injure plaintiff in the co-pending case, and did in fact use them for that purpose.

49. Yale's conduct exhibited reckless disregard for the truth, and are unconscionable in a civilized society.

50. As a direct and proximate consequence of the conduct by Yale, Plaintiff has been injured in his business and life, causing Plaintiff to suffer monetary damages in an amount not less than $700,000, said damages to be proven at the time of trial.

51. Because of Defendant's frauds as described herein, Defendant is liable to Plaintiff for costs and disbursements in an amount to be determined at trial.

52. Defendant's conduct as alleged above was done in furtherance of its own private interests, and was willful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent to harm. Accordingly, Plaintiff is entitled to an award of punitive damages from Defendant in an amount to be proven at trial and sufficient to punish, penalize and deter Defendant from engaging in such conduct in the future.

## COUNT II – FRAUD
### (Yale Health)

53. Plaintiff incorporates the foregoing paragraphs by reference.

54. Connecticut law makes it unlawful for any organization to knowingly make false representations of fact, or to conceal material facts, to induce action by another party, to the detriment of that party.

55. From 2017 through the present, Yale Health has intentionally and falsely represented to Plaintiff that his psychiatric information is held confidential, separately from other medical records, and is not made available to anyone without Plaintiff's explicit consent when, in fact, Yale Health regularly permitted and enabled Yale University administration to access this confidential and sensitive information.

56. At all relevant times, Yale Health falsely represented, and continues to represent, that Yale students' psychiatric records are kept separate from other medical records in a locked room,

and are excluded from the electronic medical record when, in fact, they are easily accessible to anyone within Yale senior management.

57.    From 2017 through the present, Yale Health has intentionally and falsely represented to Plaintiff that it informs patients of their rights to approve or refuse release of their psychiatric information to any individual outside the facility, and assure the confidential treatment of patients' personal and medical records when, in fact, Yale Health never took such actions, nor had it intendeds to take them.

58.    At all relevant times, Yale Health knew that Plaintiff had no reason to question the veracity of its representations, and that Plaintiff lacked an ability to independently verify the truthfulness of Yale Health's statements.

59.    Yale Health has intentionally and falsely represented, and continues to represent, that it ensures each patient:

   i.    is fully informed of their rights, and of all rules and regulations governing patient conduct;

   ii.   is assured confidential treatment of their personal and medical records;

   iii.  may approve or refuse their release to any individual outside the facility;

   iv.   is fully informed of the existence of business relationships between Yale Health and other healthcare providers or commercial entities;

   v.    has their privacy respected;

   vi.   is treated with consideration, respect, dignity, and individuality including privacy in treatment and care.

60.   Yale Health made its representations to induce Yale students, including the plaintiff, to seek mental health treatment on campus rather than elsewhere, and to create a perception of quality services while preserving the unimpeded access to students' most sensitive information in furtherance of Yale University's business interests.

61.   Plaintiff did not know at the time Yale Health represented its services as "confidential therapy" that his records were surveilled, and could be, and in fact were, accessed at will by the University without permission, as a sham arrangement to circumvent lawful business practices.

62.   Plaintiff justifiably relied upon Yale Health's false representations, misrepresentations, and omissions, and had no means to discover Yale Health's deceit.

63.   Yale Health acted with knowledge and reckless disregard as to the truth of its communications described herein.

64.   Yale Health perpetrated a fraud upon Plaintiff as set forth above.

65.   As a direct and proximate consequence of Yale Health's material misrepresentations, omissions, transactions, practices, and course of business, Plaintiff suffered damages.

66.   Yale Health's fraud caused Plaintiff to suffer monetary damages in an amount not less than $700,000, to be proven at trial.

67.   Defendants' conduct as alleged above was done in furtherance of their own private interests, and was willful, malicious, wanton, and oppressive, and done with conscious and callous indifference to the consequences and with specific intent to harm. Accordingly, Plaintiff is entitled to an award of punitive damages from Defendants and each of them in

an amount to be proven at trial but no less than $5.5 million and sufficient to punish,

penalize and deter Defendants from engaging in such conduct in the future.


### COUNT III – THE CONNECTICUT UNFAIR TRADE PRACTICES ACT
Conn. Gen. Stat. § 42-110b(a)
(Yale University, Yale Health)

68.   The Connecticut Unfair Trade Practices Act prohibits any person or entity from engaging

in deceptive acts or practices, as well as unfair acts or practices in the conduct of any trade

or commerce.

69.   The elements of a deceptive act or practice under CUTPA are as follows:

  i.   There must be a representation, omission or other practice likely to mislead

       consumers;

  ii.  Consumers must interpret the message, omission or practice reasonably under the

       circumstances;

  iii. The misleading representation, omission or practice must be material – that is,

       likely to affect consumer decisions or conduct.

*Caldor, Inc. v. Heslin*, 215 Conn. 590, 597, 577 A.2d 1009 (1990).

70.   At all relevant times, Yale University offered educational services in Connecticut. Tied in

every contract extended by Yale to its students is "free" access to mental health and

counseling services at Yale Health.

71.   Strict confidentiality is a material element of every relationship between a patient seeking mental health treatment and the institution providing that treatment. In other words, a reasonable student would refuse to accept Yale Health's services had she known that her information is not protected and might, and likely would, be used against her.

72.   It is an industry standard, and an ordinary common sense, that a mental health provider must obtain informed consent of any individual to release any psychiatric information of that individual to other people or entities.

73.   Yale University and Yale Health falsely represented that Yale Health's mental health services are confidential, as outlined above.

74.   Plaintiff entered into a direct customer relationship with Yale University by enrolling in its educational program. Access to MH&C services was an integral and material part of that relationship.

75.   Plaintiff entered into a direct consumer relationship with Yale Health by using its MH&C services.

76.   Yale University knew that students would rely on Yale's promise, had reason to believe that Yale was offering fully honest services, and would not investigate Yale's business practices.

77.   At no time throughout plaintiff's relationship with Yale Health did Yale University reveal that it regularly accessed plaintiff's psychiatric information without knowledge or consent.

78.   Yale University and Yale Health breached CUTPA by, without limitation:

  i.   intentionally and falsely misrepresenting that its mental health services are confidential;

ii.     falsely representing that Yale Health adequately safeguards student psychiatric information;

iii.    intentionally accessing students' and Plaintiff's psychiatric records without ever intending to seek their permission, agreement, or consent;

iv.     failing to provide clear information about its unethical business practices;

v.      misleading their customers, including Plaintiff, that they have rights to confidential treatment when, in fact, they took affirmative steps to deprive customers, including Plaintiff, of any ability to enforce these rights;

vi.     impeding students' ability to understand their rights as customers of Yale Health, which is necessary element for students to make an informed decision to agree, or decline, Yale Health's services.

79.    Yale has intentionally and persistently misrepresented the material elements of its conduct that remained unknown to Yale's customers.

80.    Yale University's trade practices, as outlined above, offend public policy and constitute an unconscionable betrayal of trust between Yale and its students in that no reasonable customer would agree to them.

81.    Yale's conduct was unethical and unscrupulous because its victims were in no position to identify Yale's dishonest conduct, meaningfully question it, and seek any redress.

82.    Yale's trade practices are immoral, unethical, oppressive and unscrupulous in that they targeted students in their most vulnerable moments, when they were least likely to understand Yale's unlawful conduct and question its deceptiveness.

83.   Yale's conduct was unfair and deceptive because Yale never sought, or intended to seek, patients' permission to access their psychiatric records before doing so, knowing that any reasonable consumer would decline to consent to such access.

84.   Yale students, including Plaintiff, could not reasonably have avoided injury arising from Yale's unlawful conduct.

85.   Defendant's conduct was done with a reckless indifference to the plaintiff's rights in a fashion that is utterly intolerable in a civilized society.

86.   Yale has attempted to conceal its misrepresentations or was an intentional or wanton violation of those rights, as outlined above.

87.   As a direct and proximate result of Yale's deceptive conduct, Plaintiff suffered an ascertainable loss in that he was deprived of his privacy, sense of dignity, and suffered damages, both physical and mental.

88.   Plaintiff is entitled to punitive damages at an amount to be determined at trial but no less than $1,000,000, attorney's fees and costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment in his favor and against the Defendants as follows:

A.   Entering an order enjoining Yale University, along with their agents, employees, and those acting in concert therewith, from accessing student psychiatric information;

15

B.  Awarding Plaintiff monetary damages in an amount not less than $700,000, said amount to be proven at trial;

C.  Awarding Plaintiff its litigation expenses, including reasonable attorneys' fees, costs, and disbursements;

D.  Awarding Plaintiff punitive damages in the sum of not less than $5,500,000 or an amount otherwise to be decided by a jury; and

E.  Granting such other relief as the case may require or as may be deemed proper and equitable.

## DEMAND FOR JURY TRIAL

Jakub Madej demands a trial by jury of all triable issues, pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## RESERVATION OF RIGHTS

Plaintiff reserves its right to further amend this Complaint, upon completion of its investigation and discovery, to assert any additional claims for relief against Defendants or other parties as may be warranted under the circumstances and as allowed by law.

Respectfully submitted,
/s/ Jakub Madej

Jakub J. Madej

16

LAWSHEET
415 Boston Post Rd Ste 3-1102
Milford, CT 06460
T: (203) 928-8486
F: (203) 902-0070
E: j.madej@lawsheet.com

*Counsel for Plaintiff*

Dated: July 15, 2020.

# EXHIBIT A

## Commonly Asked Questions

**What percentage of the undergraduate student population seeks mental health counseling at Yale Health?**

One-half of all undergraduates obtains mental health counseling from Yale Health at some point during their four years at Yale.

**Does Yale Health Basic Coverage (provided as part of my tuition) cover the services of Yale Health's Mental Health & Counseling Department?**

Yes. Every enrolled, full-time Yale student can access the services of Mental Health & Counseling free of charge regardless of his or her insurance plan.

**What if I feel my therapist is not a good match for me?**

You may ask to change therapists.

**Where is Mental Health & Counseling located?**

At the Yale Health Center, 55 Lock Street, on the third floor.

⊞

**Information discussed with a mental health counselor is held in the strictest confidence.**



# Student Guide to Mental Health & Counseling

## Yale HEALTH

yalehealth.yale.edu

## Yale HEALTH

Yale Health
Mental Health & Counseling
55 Lock Street
P.O. Box 208237
New Haven, CT 06520-8237

203 432 0290
Monday through Friday
8:30am – 5:00pm

After hours and on weekends, emergency care is available through the Acute Care Department 203 432 0123

SHARE Center
203 432 2000

yalehealth.yale.edu



call 203 432 0290

## About Mental Health & Counseling

The Mental Health & Counseling Department at Yale Health is committed to providing care for the mental health concerns of undergraduate, graduate and professional school students. There is a diverse staff of mental health professionals including psychiatrists, clinical psychologists and clinical social workers.

⊞ **Every enrolled student is eligible for services, as are those spouses and civil union partners who are Yale Health members.**

There is no cost for these services. Strict standards of confidentiality are always maintained. The offices are located on the third floor of the Yale Health Center.

### THE FIRST VISIT

Appointments for an initial consultation can be made by phone (203 432 0290) or in person, Monday through Friday, 8:30 am—5:00 pm. Appointment times for the initial visit are generally available within two or three days, and can be set up the same day in urgent situations. During the initial consultation, you can discuss your concerns and treatment options with a mental health professional.

### WHAT COMES NEXT

If you decide to begin a course of treatment, you will be matched with a therapist who will contact you to set up the next appointment.

### EMERGENCY & AFTER HOURS CARE

⊞ **Care is available 24/7 throughout the entire year.**

Mental health professionals are available 24/7 for emergency and urgent situations. Monday through Friday from 8:30 am—5:00 pm call 203 432 0290 or come into the clinic in person. Evenings after 5:00 pm, weekends, and holidays call 203 432 0123 or come into Acute Care and ask for the Mental Health & Counseling clinician on call.

## Services

### INDIVIDUAL THERAPY

Individual therapy consists of weekly one-on-one sessions. Each therapy session is usually 45 minutes long. The therapy is short-term and planned on an individual basis.

### COUPLES THERAPY

Couples therapy is available for student couples provided that both partners are Yale Health members covered under the student plan.

### GROUP THERAPY

Group therapy is an opportunity to meet with four to six other students with a therapist to share and discuss concerns in a confidential, safe environment. Groups meet once a week.

### MEDICATION

Medication is prescribed when appropriate in the context of ongoing treatment.

Students seek counseling for many different reasons, including:

| | |
|---|---|
| academic stress | loss and grief |
| adjustment difficulties | obsessions |
| alcohol/drug use | parental divorce |
| anxiety | relationships: |
| body image issues | family |
| | friends |
| competition concerns | romantic |
| compulsions | roommates |
| depression | self-esteem issues |
| eating concerns | sexual concerns |
| family or personal illness | sexual orientation and identity |
| gay/lesbian/bisexual/ transgender issues | traumatic experiences |

## Confidentiality

Everything discussed with a mental health clinician is held in strictest confidence and is not communicated to anyone without your permission, except in the rare instance of a life-threatening situation.

## Online Screenings

Yale Health offers free anonymous and confidential online screenings to all Yale students. Available screenings include:

depression
anxiety
eating disorders
alcohol misuse
post-traumatic stress disorder

To access the screening, visit
*yalehealth.yale.edu/mentalhealth*

## SHARE Center

### SEXUAL HARASSMENT & ASSAULT RESPONSE AND EDUCATION

SHARE is here to help students who have experienced sexual assault, intimate partner violence, harassment, abuse, or any other form of sexual misconduct. Some students call the hotline just once, while others follow up with individual or group counseling. SHARE's professional staff can facilitate any actions a survivor wishes to take: seeking medical treatment, pursuing informal remedies, filing a disciplinary complaint, and/or making a police report.

⊞ **If you want to talk with a counselor right away call our 24-hour hotline (203 432 2000). For other questions or to make an appointment, call our office, Monday through Friday, 8:30 am — 5:00 pm (203 432 6653). We are here to help.**

The SHARE Center is located on the lower level of the Yale Health Center.

For more information and resources, visit *sharecenter.yale.edu.*

# call 203 432 0290

# EXHIBIT B

# Yale HEALTH

Mental Health & Counseling
PO Box 208237
New Haven, CT 06520-8237
Phone: 203-432-0290 Fax: 203-432-8458

## AUTHORIZATION FOR RELEASE OF MENTAL HEALTH RECORD
### (Also known as Protected Health Information)

PATIENT NAME _____     Date of Birth _____

Address (Mailing) _____     Phone _____

_____

I authorize Yale Health Department of Mental Health & Counseling to use or disclose information from my mental health record, which may include information about psychiatric diagnosis and treatment and substance abuse issues to:

Name:_____     Phone _____

Address:_____     FAX _____

_____

Dates of Treatment: _____

Information to be released (Please describe) _____

Purpose of Disclosure _____

1.  I understand that, unless withdrawn, this authorization will expire 180 days from the date of signature. A photocopy of this form will be considered as valid as the original.
2.  I understand that I may revoke this authorization at any time by notifying the Department of Mental Health & Counseling at the address indicated above, in writing, and this authorization will cease to be effective on the date notified except to the extent action has already been taken in reliance upon it.
3.  I understand that information used or disclosed pursuant to this authorization may be subject to re-disclosure by the recipient and no longer be protected by Federal privacy regulations. However, other state or federal law may prohibit the recipient from disclosing specially protected information, such as substance abuse treatment information and mental health information.
4.  I understand that my refusal to sign this Authorization will not jeopardize my right to obtain present or future treatment for psychiatric disabilities except where disclosure of the information is necessary for the treatment.
5.  My health care and payment for my health care at Yale Health Center will not be affected if I do not sign this form.
6.  I understand that I can request a copy of this form after I sign it.
7.  I understand that in compliance with CT general statute, I will pay a fee of $0.65 per page.

By signing below, I acknowledge that I have read and understand this Authorization.

_____ OR _____   _____
Signature of Patient                           Date           Parent/Legal Guardian/Authorized Person      Date

_____
Relationship to Patient

Rev. 1/11

# EXHIBIT C

## AUTHORIZATION TO DISCLOSE HEALTH INFORMATION

Patient Name:_____   Social Security #:_____

Date of Birth: _____ Date of Admission / Specific Treatment Date(s): _____

AKA (other names): _____

I hereby authorize _____ to disclose my individually identifiable
health information to **Donahue, Durham & Noonan, PC.** in the manner described below.

| | | | |
|---|---|---|---|
| 1. Information should be delivered via (select one) | X | Mail (provide address): **Donahue, Durham & Noonan, PC., 741 Boston Post Road, Suite 306, Guilford, CT 06437** | |
| | | Fax (provide fax number): | |
| | | Pick-Up (provide name of individual picking up information): | |

| | | | | |
|---|---|---|---|---|
| 2. Purpose of this disclosure (check one) | | Continuation of Medical Care | X | Attorney |
| | | Substantiation of Payment Claims | | Personal Use |
| | | Other (specify): | | |

| | | | | |
|---|---|---|---|---|
| 3. Information to be disclosed (check as appropriate) | X | Emergency Records | X | Consultations |
| | X | History & Physical | X | Physician's Orders |
| | X | Progress Notes | X | EKG's |
| | X | Operative Note | X | Physical Therapy Record |
| | X | Laboratory / Pathology Reports | X | Diagnostic Imaging Exams |
| | X | Discharge Summary | X | Substance Abuse Records |
| | X | HIV Test Results | X | Mental Health Records |
| | X | Psychotherapy Records | X | Entire Record |
| | | Other (specify): | | |

| | |
|---|---|
| 4. If you are the legally authorized representative of the patient, describe the scope of your authority to act on the patient's behalf | Parent |
| | Durable Power of Attorney for HealthCare (attach proof of authority) |
| | Legally Authorized Representative (attach proof of authority) |
| | Personal Representative of the Estate (attach proof of authority) |
| | Other (specify and attach proof of authority) |

5. I understand that if the person or entity that receives the above information is not a health care provider or health plan covered by federal privacy regulations, the information described above could be redisclosed by such person or entity and will likely no longer be protected by the federal privacy regulations.

6. I understand that this authorization is valid for this release only and will expire upon the complete processing of this request.

7. A copy of this authorization shall be accepted with the same authority as the original.

Signature of Patient or legally Authorized Representative: _____

Relationship to Patient: _____   Date: _____