AUG 28 2020 PM2:22
FILED - USDC - CT - BPT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

JAKUB MADEJ,
     Plaintiff,

     v.

YALE UNIVERSITY et al.
     Defendants.

Civil Action No.
3:20-cv-00991 (JCH)

JURY TRIAL DEMANDED

AUGUST 27, 2020

## PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY
## AND ENTRY OF PROTECTIVE ORDER

Plaintiff Jakub Madej, pursuant to Federal Rules of Civil Procedure 26(d), moves to conduct limited expedited discovery narrowly targeted to identify and join the individual defendants, and for a protective order intended to preserve already scant evidence from accidental or intentional disposition before discovery. The expedited discovery seeks to uncover who and how secretly accessed Plaintiff's confidential psychiatric information, and to ensure that still existing evidence of the alleged fraud is preserved until discovery. This discovery will allow Plaintiff to pursue these parties and put a stop to their questionable activities.

The exigencies of this matter require immediate action. Absent expedited discovery, it is likely that Jakub will be unable to ascertain the scope of the Yale's fraud because, as the complaint shows, it was intended to remain undetected and leave no physical record. Good cause exists for granting the motion: the request is reasonable and limited in scope and time, and seeks only basic identifying proportional to this stage of the proceedings. The burden of compliance is minimal,

and will not impose an undue hardship upon the defendants. As shown in the accompanying memorandum, courts in this Circuit routinely grant similar motions in cases alleging fraud, unfair competition, or infringement.

The discovery consists of four (4) interrogatories, one (1) request for production of documents, and one third party deposition, collectively attached hereto as <u>Exhibit A</u>.

This motion is based on the accompanying memorandum of law, and the attached affidavit. A proposed order is attached for the Court's convenience. Counsel is available, should the Court want to hear from the plaintiff, or if a hearing was helpful to the Court.

For the foregoing reasons, Plaintiff Jakub Madej respectfully requests that this Court enter an Order requiring the defendants to respond to Jakub's discovery requests within ten (10) days from service and granting a Protective Order preventing spoliation of evidence.

Dated:  August 27, 2020
        Bridgeport, Connecticut

Respectfully submitted,

By: /s/ Jakub Madej
Jakub J. Madej
LAWSHEET
415 Boston Post Rd Ste 3-1102
Milford, CT 06460
T: (203) 928-8486
F: (203) 902-0070
E: j.madej@lawsheet.com

*Counsel for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| JAKUB MADEJ,<br>    Plaintiff, | Civil Action No.<br>3:20-cv-00133 (JCH) |
| v. | JURY TRIAL DEMANDED |
| YALE UNIVERSITY et al.<br>    Defendants. | AUGUST 26, 2020 |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S MOTION FOR EXPEDITED DISCOVERY AND
## ENTRY OF PROTECTIVE ORDER

Plaintiff Jakub Madej ("Jakub", "Plaintiff") respectfully submits this memorandum of law in support of his motion for expedited discovery and entry of protective order.

## I.   INTRODUCTION

Between March 1 and 5, 2020, Defendants Does 1-10 fraudulently accessed Plaintiff's sensitive psychiatric information and used them to intimidate Plaintiff into withdrawing his allegations against the defendant in a co-pending case. Jakub moves this Court for an order allowing him to take discovery from Yale University and a third-party Colleen Davis to obtain information likely to identify the identities of Doe defendants, and the scope of the alleged fraud. As set forth below, the Court should grant Jakub's Motion because good cause exists for the proposed discovery.

## II.   FACTUAL BACKGROUND

This is a fraud action against Yale University ("Yale") and Yale Health, an on-campus clinic operated by the defendant university. Yale is an elite college located in New Haven, Connecticut. (Am. Compl. ¶ 12.) Yale offers "free" mental health services to all paying students enrolled in Yale's education programs. (Id. ¶ 13.) Approximately 70% of Yale students experience psychological concerns, and 50% seek Yale Health's services. (Id. ¶ 34) Psychiatric records contain some of the most sensitive and private information about any human being, which is revealed in confidence that they would be kept strictly confidential. (Id. ¶¶ 51-54). After several students committed suicide at Yale in 2015, the University's executives secretly and regularly accessed student psychiatric records to identify more "risky" individuals as part of the enterprise risk management program to take a preemptive action, including dismissals (Id. ¶¶ 56-58). Yale never sought consent of its students to access this confidential information, and ensure that no record of disclosure is left. (Id. ¶ 59) Yale's actions were motivated by its management's business judgment, a desire to preserve the University's reputation, as well as an effort to minimize legal liability and mitigate litigation exposure. (Id. ¶¶ 37-40)

Plaintiff is an undergraduate student at Yale University. (Id. ¶ 61.) He was treated for depression and attention deficit disorder. (Id. ¶ 62.) After being brutally stabbed in 2018, he sought mental health treatment at Yale Health. (Id. ¶¶ 63, 64.) Yale represented that its services are confidential. (Id. ¶¶ 65-67.) Between January and March 2020, Yale Health provided Plaintiff's all psychiatric records to the University's administration, which used them to intimidate Plaintiff to dismiss his

allegations against Yale in a co-pending case in this district. (Id. ¶¶ 74-75.) When Plaintiff requested a list indicating all disclosures of his health information, Yale's Chief Privacy Officer officially declared that none were made. (Id. ¶ 76.)

On March 5, 2020, at approximately 2:56 pm, Plaintiff received a copy of his entire psychiatric record from an individual who identified herself as Colleen Davis. (Aff't. ¶ 5.) Plaintiff has not authorized Ms. Davis to access his psychiatric record, and does not know Ms. Davis. (Id. ¶ 6.) Upon information and belief, Ms. Davis is not employed at Yale University, and has no authorization to request, let alone access, any student's psychiatric data from Yale Health. (Id. ¶ 7.)

Plaintiff now seeks to learn how Ms. Davis accessed his psychiatric information, as well as who and how requested, accessed, and disclosed his records without his consent to retaliate against him.


## III.   LEGAL STANDARD

The court has broad exercise to order discovery prior to the parties' Rule 26(f) conference. Fed. R. Civ. P. 26(d)(1). The party seeking expedited discovery bears the burden of showing good cause for the requested departure from usual discovery procedures. Pod–Ners, LLC v. Northern Feed & Bean of Lucerne, Ltd. Liability Co., 204 F.R.D. 675, 676 (D.Colo.2002).

The applicable standard in the Second Circuit is that of "reasonableness and good cause"[1]. Ayyash v. Bank Al–Madina, 233 F.R.D. 325, 326 (S.D.N.Y. 2005)

---

[1] Second Circuit occasionally applied the preliminary-injunction-style analysis set out in Notaro v. Koch, 95 F.R.D. 403, 405 (S.D.N.Y.1982). The recent trend rejects the Notaro approach as overly stringent in favor of the more flexible "good cause" standard. See generally Semitool, Inc. v. Tokyo

(adopting the test); <u>N. Atl. Operating Co. v. Evergreen Distribs., LLC</u>, 293 F.R.D. 363, 367 (E.D.N.Y. 2013) (noting the split and the trend in favor of the reasonableness test). The analysis is whether the moving party can "prove that the requests are reasonable under the circumstances." <u>Pietsch v. Marcantonio</u>, 2016 WL 1069656, at *4 (E.D.N.Y. Mar. 16, 2016) (quoting <u>N. Atl. Operating Co. v. Evergreen Distribs., LLC</u>, 293 F.R.D. 363, 367 (E.D.N.Y. 2013)).

Courts found good cause when "the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party." <u>Id.</u>, citing <u>Semitool, Inc. v. Tokyo Electron Am., Inc.</u>, 208 F.R.D. 273, 276 (N.D. Cal. 2002). Other factors this Circuit has considered include the privacy expectations of the defendants, the breadth of the discovery sought in terms of inconvenience to the third party to be subpoenaed, the potential injury to the plaintiffs if such discovery is denied, the plaintiffs' interests in pursuing cognizable claims, and the interests of justice. <u>Catlin v. Global</u>, No. 14-CV-6324L, 2014 WL 3955220, at *2 (W.D.N.Y. Aug. 13, 2014) (noting that courts in this circuit apply "a variety of reasonableness-based tests"). <u>See</u> <u>Pearson Educ., Inc. v. Doe</u>, 2012 WL 4832816, at *3 (S.D.N.Y. Oct. 1, 2012) (identifying specific factors in infringement cases). Courts also consider the potential prejudice if expedited discovery is not granted, and the scope of the discovery reuqest. <u>See</u> <u>Directory Assistants, Inc. v. Doe</u>, 2010 WL 10128887, at *1 (D. Conn. Apr. 28, 2010) (granting leave under the

_____

Electron Am., Inc., 208 F.R.D. 273, 276 (N.D. Cal. 2002) (rejecting the <u>Notaro</u> approach as inconsistent with Rules 1 and 26(d) because it "circumscribes the wide discretion normally accorded the trial court in managing discovery").

Ayyash test); Qwest Commc'ns Int'l, Inc. v. WorldQuest Networks, Inc., 213 F.R.D. 418, 420. (D. Colo. 2003). Heightened scrutiny applies in reviewing an *ex parte* application. Ayyash, 233 F.R.D., at 327.

Courts recognize the need for expedience when dealing with theft and fraud, or where the defendant has the means and incentives to destroy evidence. See, e.g., Ayyash, 233 F.R.D. at 325 (finding "considerable urgency" and granting *ex parte* expedited discovery where defendants were foreign corporations "who have both incentive and capacity to hide their assets"); Amari v. Spillan, No. 2:08-cv-829, 2008 U.S. Dist. LEXIS 105655, at *6-8 (S.D. Ohio Dec. 19, 2008) (granting expedited discovery to determine the extent of third-party involvement in an alleged three-year scam). Expedited discovery may also be appropriate in cases where physical evidence may be consumed or destroyed with the passage of time, thereby disadvantaging one or more parties to the litigation. Qwest, 213 F.R.D. at 419. Good cause frequently exists in cases involving claims unfair competition, or where evidence may be lost or destroyed with time. Pod-Ners, LLC v. Northern Feed & Bean of Lucerne Ltd. Liability Co., 204 F.R.D. 675, 676 (D. Colo. 2002) (citing Benham Jewelry Corp. v. Aron Basha Corp., 1997 WL 639037 at *20 (S.D.N.Y. Oct.14, 1997)); Caston v. Hoaglin, 2009 WL 1687927, at *2 (S.D. Ohio June 12, 2009). "Where a plaintiff has a potentially meritorious claim and no ability to enforce it, courts have found good cause for expedited discovery." Mirza v. Doe, Civil Action No: 19-CV-11940 (RA), at *2 (S.D.N.Y. Apr. 23, 2020) (referencing Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 239, 241 (S.D.N.Y. 2012))

Some courts have permitted expedited discovery simply to allow a case to progress. See, e.g., Sheridan v. Oak St. Mortgage, LLC, 244 F.R.D. 520 (E.D.Wis. 2007) (allowing limited discovery to obtain information regarding class certification and damages, without which the plaintiff could not pursue his action.) In timing of discovery prescribed by Rule 26(d), the court focuses not on "protecting the unwary and unrepresented defendant", but rather on "orderly case management". Semitool, Inc., 208 F.R.D. at 276.

IV.    ARGUMENT

   A.  Good Cause Exists for Expedited Discovery

Plaintiff prevails under the applicable "good cause" standard. "Good cause" consists of "examination of] the discovery request... on the entirety of the record to date and the reasonableness of the request in light of all of the surrounding circumstances. Merrill Lynch, Pierce, Fenner & Smith v. 0 'Connor, 194 F.R.D. 618, 624 (D. Ill. 2000). The moving party needs to make a *prima facie* showing of the need for the expedited discovery. Merrill Lynch, Pierce, Fenner & Smith v. 0 'Connor, 194 F.R.D. 618, 623 (D. Ill. 2000). Here, Plaintiff make an appropriate showing on three separate occasions.

First, Plaintiff seeks expedited discovery to determine the identities of Doe defendants, the proper parties to this action. Plaintiff's complaint discusses in detail the nature and scope of the alleged fraud, and makes a clear case for Does' motivation and means. The named defendant Yale University is a corporation employing 25,000 individuals, most of whom have no relation to or knowledge of the

fraud; narrowing the defendants to actual defendants will serve the interests of justice. The proposed discovery is narrowly targeted to this stage of the case: while this action arises from a multiyear scheme, the events underlying the present motion concern only one instance of unauthorized disclosure of sensitive information that belonged to plaintiff, specifically at the beginning of March 2020. Granting the request will enable Plaintiff to fully understand the nature of the alleged conduct, and join the Doe defendants as parties to this action.

Second, Plaintiff exhausted traditional avenues for identifying individual defendants pre-service. Plaintiff suspects that Doe defendants likely include senior administrators at defendant university, who are concealing their identities behind the corporate wall. Yet the conduct alleged was instituted, enabled, and promoted not by a corporate entity itself but by only a handful of individuals, who had means and incentives to organize it. Plaintiff's affidavit demonstrates that Doe defendants are individuals capable of being sued, and the requested discovery will likely reveal their identities. Allowing expedited discovery to identify the names of Doe defendants is routine in this Circuit. See Digital Sin, Inc. v. Does 1-176, 279 F.R.D. 239, 242 (S.D.N.Y. 2012); In re Malibu Media Adult Film Copyright Infringement Cases, 15-cv-2721 (JS)(SIL), at *9 (E.D.N.Y. June 8, 2015).

Third, Plaintiff needs expedited discovery to proceed with this case, and defendant's cooperation to date has been less than orderly. Expedited discovery will force the defendant to address the merits of this case rather than engage in

stonewalling behavior, which – as discussed below – defendants have already
exhibited.

     B. <u>Expedited Discovery is Reasonable Under the Circumstances.</u>

     In considering Plaintiff's request to expedite this discovery, the Court should
"examine the [Plaintiff's] discovery request on the entirety of the record to date and
the reasonableness of the request in light of all the surrounding circumstances."
<u>Ayyash</u>, 233 F.R.D. at 327 (S.D.N.Y. 2005) (citation omitted). Plaintiff made a *prima
facie* case for Yale's fraudulent scheme starting in 2014 but seeks only limited
information related to one instance, where defendant's actions are indisputable.
Plaintiff's application is supported by a detailed and verified declaration, which sets
forth specific facts that give rise to the acts into which Plaintiff now seeks discovery.
Expedited discovery is narrowly tailored to this stage of the proceedings, and will
impose minimal burden on defendants, which is clear from the face of the attached
requests.

     Granting the present motion will also promote a faster resolution on the
merits rather than on alleged procedural "errors" unrelated to the merits. Indeed,
Yale has already demonstrated an intent to stonewall here. On August 24, 2020,
when its answer to the original complaint was due, Yale filed a motion to dismiss,
alleging insufficient service of process. (ECF #14) The process in this case was
served via certified mail, return receipt requested on Yale's general counsel. (ECF
#10, at 1.) Yale did not contest that an authorized representative accepted service
and signed off a receipt to confirm that delivery was successful. In fact, Yale

presented no evidence – whether a verified allegation or an affidavit – to controvert the presumption that a proper service was made. Instead, the University makes an irrelevant and inapplicable argument that a party cannot serve process himself, which is not even the case here. Ironically, Yale even failed to effectuate any service of its paper – which itself alleges improper service – on plaintiff, who is yet to be authorized to file and receive papers electronically. (ECF #3) Absent expedited discovery, defendant will continue its stonewalling conduct unrelated to the merits, or any genuine legal issues, in stark violation of the Rule 1 mandate.

Some courts allowed expedited discovery simply to allow a case to progress. The court should do the same here. In Semitool, a patent dispute, plaintiff requested the technical specifications and manuals of defendant's infringing device; a property inspection; and documents and property inspections at two of Defendants' customers. One month after plaintiff filed its motion, the court granted expedited discovery finding that it would "substantially contribute to moving this case forward". The Semitool court noted that the request was narrowly tailored, and the requested material was not otherwise accessible. This Court should follow the Semitool lead, and grant expedited discovery to move this case forward – and facilitate an orderly and inexpensive determination of this case on its merits. Semitool v. Tokyo Electron America, Inc., 208 F.R.D. 273 (N.D. Cal. 2002).

In light of all these circumstances, expedited discovery is entirely reasonable, and this Court should allow it.

C. Standard Protection Mechanisms are Insufficient, and Circumstances
   Warrant Entry of Protective Order.

As a party to this action, Yale University and Yale Health already have an

obligation to preserve evidence that is relevant to the litigation. See, e.g., Zubulake

v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y.2003) (quoting Fujitsu Ltd. v.

Fed. Express Corp., 247 F.3d 423, 436 (2d Cir.2001)). Here, these standard

protection mechanisms are insufficient for at least two reasons.

First, the alleged conduct is extensive in time, and intentional in nature. The

complaint shows that individuals involved in the fraud were legally sophisticated,

and actively sought to circumvent lawful procedures that mandate a disclosure of

individuals who accessed the sensitive information in dispute. The individuals in

question are likely knowledgeable about the already existing obligations in

litigation, which they are incentivized to interpret aggressively, with potentially

detrimental consequences if evidence cannot be restored. The standard protection

procedures in civil discovery are thus not enough to ensure that already scant

evidence is preserved before discovery. Entering the attached order will enable

Plaintiff to ensure that all relevant evidence is left untouched before discovery can

take place.

Second, the remaining evidence is likely elusive, susceptible to being

destroyed, and difficult to restore with time. The relevant evidence will primarily

consist of depositions, which will reveal who specifically and how orchestrated the

fraud described in the complaint. However, the crucial remaining physical

documents are likely to be electronic, stored at location and formats only known to

defendants, and only within defendants' control. Plaintiff was unable to obtain any information through an independent investigation despite numerous attempts. Accordingly, Plaintiff cannot discern how likely is the information at bar capable of being accidentally deleted or overwritten. Entering the attached order will ensure that neither instance becomes reality.

Rule 26(c)(1)(B) of Federal Rules of Civil Procedure provides that the Court may enter a protective order requested by any party or person from whom discovery is sought "specifying terms, including time and place, for the disclosure or discovery". For the foregoing reasons, the court should enter the attached protective order. The burden of compliance with the protective order is not be particularly onerous for any defendant. Were the defendants to claim that they did not engage in the alleged fraud, the protective order will not impose any undue cost on compliance.

Accordingly, this Court should enter the attached protective order intended to ensure that all evidence is preserved until discovery.

V.   CONCLUSION

Plaintiff has made a strong evidentiary showing of the substantiality of his claims, and the need for expedited discovery outweighs the prejudice to Yale defendants. The Court should therefore grant Plaintiff's motion for expedited discovery and entry of protective order.

Dated:  August 27, 2020                    Respectfully submitted,

       Bridgeport, Connecticut          By: /s/ Jakub Madej_____
                                     Jakub J. Madej
                                     FACTS ABOUT YALE, LLC
                                     415 Boston Post Rd Ste 3-1102
                                     Milford, CT 06460
                                     T: (203) 928-8486
                                     F: (203) 902-0070
                                     E: j.madej@lawsheet.com

                                     *Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JAKUB MADEJ,
     Plaintiff,

     v.

YALE UNIVERSITY et al.
     Defendants.

Civil Action No.
3:20-cv-00991 (JCH)

JURY TRIAL DEMANDED

AUGUST 28, 2020

### AFFIDAVIT OF JAKUB MADEJ

I, Jakub Madej, declare pursuant to 28 U.S.C. § 1746 as follows:

1. My name is Jakub Madej. I am over the age of eighteen. I am competent to testify. I made this declaration on personal knowledge.

2. I submit this affidavit in support of *Plaintiff's Motion for Expedited Discovery and Entry of Protective Order.*

3. In 2019, I have sought mental health treatment services at Yale Health, an on-campus clinic at Yale University.

4. At no point during my relationship with Yale Health MH&C Department was I presented with a written agreement governing that relationship. Upon information and belief, Yale Health MH&C does not present a written contract to its student customers at any time.

5. I have never authorized any disclosure of my personal health information to any individual, whether verbally or in writing. Yale Health has not sought my permission to disclose my psychiatric records outside the facility, or to anyone else.

6. Between February 2018 and March 2020, Yale University and Yale Health represented to me, through their binding handbooks, materials, and official statements on their websites, that all information gathered at Yale Health MH&C department would not be disclosed to anyone without my permission.

7.  On March 5, 2020, at approximately 2:56 pm ET, I received an email from an individual who identified herself as Ms. Colleen Davis.

8.  Attached to Ms. Davis's email was a complete written record of my visits with a psychiatrist at Yale Health, and detailed notes describing my mental health conditions, identifying prescription medications that I receive, and stating various personal and sensitive facts about my past concerns.

9.  Ms. Davis's email contained perhaps the most confidential and sensitive information imaginable about myself.

10. I don't know Ms. Davis. I have never met Ms. Davis. I don't know who Ms. Davis is.

11. I have not authorized Ms. Davis to access my psychiatric information at any time.

12. On March 9, at approximately 7:58 am, I officially requested a written record accounting for all disclosures of my health information from Yale Health. In other words, I requested a list of who, when, how, and why accessed my personal medical information.

13. On March 11, at approximately 11:51 am, I received a response from Ms. Susan Bouregy, who identified herself as Chief Privacy Officer and Acting HIPAA Privacy Officer at Yale University.

14. Ms. Bouregy represented to me that no disclosures have been made.


I declare under penalty of perjury that the foregoing is true and correct.

/s/ Jakub Madej

Jakub Madej
Digitally signed
by Jakub Madej
Date: 2020.08.28
12:18:30 -04'00'