# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | | |
|---|---|---|---|
| JAKUB MADEJ | | § | Civil Action No. 20cv991 (JCH) |
| | Plaintiff, | § | |
| vs. | | § | JURY TRIAL DEMANDED |
| | | § | |
| YALE UNIVERSITY et al., | | § | OCTOBER 27, 2020 |
| | Defendants. | § | |
| | | § | |

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE (DE 27)

On October 6, 2020, Defendants Yale University, Yale Health, Patrick M. Noonan, Harold Rose, Caroline Hendel, Paul Genecin, and Lorraine Siggins (collectively, "Yale Defendants") moved to dismiss this action for insufficient service of process under Rule 12(b)(2), and for lack of personal jurisdiction under Rule 12(b)(5) of Federal Rules of Civil Procedure. See Docket Entry ("DE") 27. They also seek to strike certain material from the amended complaint, pursuant to Federal Rule 12(f). I now file this opposition to Defendants' motion and, for the reasons explained in the accompanying memorandum, respectfully request that the Court deny both motions and direct the Yale Defendants to file an answer within 14 days.

Dated:  October 27, 2020
New York, NY

Respectfully submitted,

By: /s/ Jakub Madej
Jakub J. Madej
THE LAWSHEET CORPORATION
415 Boston Post Rd Ste 3-1102
Milford, CT 06460
T: (203) 928-8486
F: (203) 902-0070
E: j.madej@lawsheet.com

ORAL ARGUMENT REQUESTED

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | | |
|---|---|---|---|
| JAKUB MADEJ | | § | Civil Action No. 20cv991 (JCH) |
| | Plaintiff, | § | |
| vs. | | § | JURY TRIAL DEMANDED |
| | | § | |
| YALE UNIVERSITY et al., | | § | OCTOBER 27, 2020 |
| | Defendants. | § | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE (DE 27)

Plaintiff Jakub Madej opposes Defendants' motion to dismiss and a motion to strike (DE 27). This Court should promptly deny them. Defendants fail to disturb the presumption attached to plaintiff's sworn declarations that service was effective. In any event, the record is clear that Defendants were properly and timely served with process.

## I.  YALE'S ORWELLIAN SCHEME

This is a fraud action against Yale University ("Yale"). Yale operates a university in New Haven, Connecticut. Approximately 70% of Yale students experience psychological concerns, and 50% seek mental health services at an on-campus clinic, Yale Health. (Am. Compl. ¶¶ 32-34). Yale Health is directly controlled by the University. (Id. ¶ 13). At all times, Yale marketed its psychiatric services for its students as "free" and "strictly confidential". (Id. ¶ 94). Plaintiff alleges that Yale's senior management unlawfully and regularly accessed student psychiatric records collected at Yale Health to secretly identify more "risky" individuals as part of the enterprise risk management program. (Id. ¶¶ 56-60). Madej was one of the affected students. (Id. ¶¶ 61-78). Psychiatric records contain some of the most sensitive and

private information about any human being, which is revealed in confidence that they would be kept strictly confidential. (Id. ¶¶ 55). Yale never sought students' consent to access their confidential information, and ensured that no record of disclosure is left. (Id. ¶ 59). This Orwellian scheme commenced in 2015, when several students committed suicide for unidentified reasons, bringing nationwide attention to Yale College. (Id. ¶¶ 41-50). Yale's actions were motivated by its management's business judgment, a desire to preserve the University's reputation, as well as an effort to minimize legal liability and mitigate litigation exposure. (Id. ¶¶ 37-40).

Madej now seeks, in addition to monetary damages, a judicial declaration under 28 U.S.C. § 2201 rendering Yale's conduct unlawful.

## II.   PROCEDURAL BACKGROUND

In an amended complaint filed on August 28, 2020, plaintiff Jakub Madej ("Madej") accused defendants Yale University, Yale Health, and several Yale employees of common law fraud, fraudulent misrepresentation, civil conspiracy, and deceptive trade practices under Connecticut state law. (DE 16, 17). Madej alleges that Yale University has falsely represented in official materials and formal statements made to Yale students, including Madej, that Yale Health's mental health services are confidential when, in fact, Yale's senior management secretly accessed student psychiatric records since at least year 2015. (DE 16, ¶¶ 38, 117-121). Madej also alleges that five individuals, including two Yale University in-house counsel, knowingly participated in the scheme. (Id. ¶¶ 163-169).

Between September 2 and September 9, 2020, all seven defendants were served with process on by a neutral party, who mailed a copy of the summons and the complaint to defendant's usual place of abode via certified mail, return receipt requested. (DE 25). That is, a delivery contractor delivered the initiating documents to the specifically identified person. For Yale University, service was effected on its general counsel. (DE 25-2). Process on Yale Health, a subsidiary of Yale University, was served twice: on the University itself and on the subsidiary. (Id.) Each defendant acknowledged delivery via signature. (DE 25)

Defendants' answer was due within 14 days of service, or by September 16, 2020. Fed. R. Civ. P. 15(a)(3). Defendants filed an appearance on September 16, 2020 and requested an extension of three weeks, or until October 9, to answer the Amended Complaint. The Court granted this extension. (DE 24-26). On October 6, defendants filed the present motion, asserting that service was not properly effected on them. (DE 27)

III.   **LEGAL STANDARD**

   A. <u>**Motion to Dismiss for Insufficient Service of Process**</u>

A defendant may file a motion to dismiss for insufficient service of process. Fed. R. Civ. P. 12(b)(5). The plaintiff is initially responsible for having the summons and complaint served in accordance with the procedural requirements set forth in Federal Rule 4. Fed. R. Civ. P. 4(c). Plaintiff's affidavit of service constitutes a *prima facie* evidence that service was effective. *People of State of New York ex rel. Spitzer v.*

*Operation Rescue Nat.*, 69 F. Supp. 2d 408, 416 (W.D.N.Y. 1999), citing *O'Brien v. R.J. O'Brien Assocs., Inc.*, 998 F.2d 1394, 1398 (7th Cir. 1993) ("A signed return of service constitutes prima facie evidence of valid service which can be overcome only by strong and convincing evidence.") (quotation marks omitted). See also *Howard Johnson Int'l, Inc. v. Wang*, 7 F. Supp. 2d 336, 339 (S.D.N.Y. 1998), *aff'd*, 181 F.3d 82 (2d Cir. 1999) (applying New York law); *The Reynolds Corp. v. National Operator Services, Inc.*, 208 F.R.D. 50, 52 (W.D.N.Y. 2002) (same). The affidavit of service operates as a rebuttable presumption that proper service was made. *Old Republic Ins. Co. V. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002) ("[I]n the absence of contrary facts, we presume that [the defendant] was properly served with the complaint.") (collecting cases). The defendant, as a party challenging service, bears the initial burden of rebutting the presumption that service was ineffective. *People of State of New York ex rel. Spitzer,* 69 F. Supp. 2d at 416, citing *Bally Export Corp. v. Balicar, Ltd.*, 804 F.2d 398, 404 (7th Cir. 1986) ("In all challenges to sufficiency of process, the burden of proof lies with the party raising the challenge."). See also *Peia v. U.S. Bankr. Courts*, 2001 WL 789201, at *1 (D. Conn. May 22, 2001) (the defendant bears the burden of proof when challenging sufficiency of service of process); *Taylor v. Norwalk Cmty. Coll.*, 2015 WL 5684033, at *6 (D. Conn. Sept. 28, 2015) (same). The presumption of valid service is not disturbed where the defendant fails to swear to "specific facts to rebut the statements in the process server's affidavits". *Old Republic Ins. Co.*, 301 F.3d at 58. Failure to prove service does not affect the validity of service. Fed. R. Civ. P. 4(l)(3).

Objections to service must be specific. They must point out specifically how the plaintiff failed to satisfy the service provision utilized. *Koulkina v. City of New York*, 559 F. Supp. 2d 300, 312 (S.D.N.Y. 2008) (denying a motion) (collecting cases). See also *Taylor*, supra, at 6* ("persuasive case law of this District … suggests that a defendant indeed bears the burden of proof when challenging sufficiency of service of process"), quoting *O'Brien v. R.J. O'Brien & Assocs., Inc.*, 998 F.2d 1394, 1400 (7th Cir. 1993); *Griffin–Nolan v. Providence Washington Ins. Co.*, 2005 WL 1460424 (N.D.N.Y. 2005) (denying a Rule 12(b)(5) motion to dismiss for failure to specify supporting facts in an affidavit); 5C Wright & Miller, Federal Practice & Procedure § 1353 (3d ed.) ("The objection to insufficiency of process or its service should point out specifically in what manner the plaintiff has failed to satisfy the requirements of the service provision that was utilized. If the record before the court does not reveal any deficiency in the process or in its service, the defendant's motion to dismiss or to quash service must be denied."). A "mere denial" of receipt of service is insufficient to rebut the initial presumption, *Nolan v. City of Yonkers*, 168 F.R.D. 140, 144 (S.D.N.Y. 1996) (collecting cases), as are defendants' "bare allegation[s]" that they were improperly served. *Sassower v. City of White Plains*, 1993 WL 378862, at *7 (S.D.N.Y. Sept. 24, 1993) ("[B]are allegation by a defendant that he was improperly served cannot be allowed to bely the private process server's return"). "Unsupported and uncorroborated statements" that service was not made will not do. *United States v. Jost*, 9 F. Supp. 3d 303, 307 (W.D.N.Y. 2014) (denying defendant's motion when she failed to set forth "any facts supporting her claim that service was not made"). Courts look for sworn

statements setting forth specific facts contesting material facts from the initial affidavit of service. See, e.g., *Griffin–Nolan v. Providence Washington Ins. Co.*, 2005 WL 1460424, (N.D.N.Y. 2005) (noting that "common sense dictates[s] that a motion to dismiss for failure to serve summonses requires a supporting affidavit").

The burden of proof as to the effectiveness of service shifts to plaintiff only after the defendant puts forward sufficient evidence to rebut the initial presumption of effective service. *Sassower*, 1993 WL 378862, at *7 (burden does not shift when objections lack specificity as to how the rules of process were not satisfied); *King v. Best Western Country Inn*, 138 F.R.D. 39, 43 (S.D.N.Y. 1991) ("Once defendant has asserted [specific] grounds, the burden of proof to establish proper service of process [is] upon plaintiffs") (internal quotations omitted).

### B. Motion to Strike

Pursuant to Federal Rule of Civil Procedure 12(f), a defendant may move to "strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Motions to strike are disfavored and rarely granted. *Tucker v. Am. Int'l Grp., Inc.*, 936 F. Supp. 2d 1, 15 (D. Conn. 2013) (collecting cases). Striking a portion of a pleading is "a drastic remedy" and is often sought simply as a dilatory tactic. *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). See 5C Wright & Miller, *Federal Practice & Procedure* § 1380 ("[N]umerous judicial decisions make it clear that motions under Rule 12(f) are viewed with disfavor … because it often is sought by the movant simply as a dilatory or harassing tactic.").

The party moving to strike bears the burden of persuasion, and it is a heavy one. *Impulsive Music v. Pomodoro Grill, Inc.*, 2008 WL 4998474, at *2 (W.D.N.Y. Nov. 19, 2008) (motions to strike viewed with disfavor). To prevail, the movant must demonstrate that the allegations it seeks to have stricken have no bearing on the issues in litigation; that no evidence in support of these allegations would be admissible; and that permitting these allegations to stand would prejudice the movant. *Tucker*, 936 F. Supp. 2d at 16, citing *Roe v. City of New York*, 151 F.Supp.2d 495, 510 (S.D.N.Y. 2001). Courts in the Second Circuit will ordinarily deny a motion to strike "unless it can be shown that no evidence in support of the allegation would be admissible." *Simons v. Yale Univ.*, 2020 WL 5816950, at *4 (D. Conn. Sept. 30, 2020), citing *Lipsky v. Commonwealth United Corp.*, 551 F. 2d 887, 893 (2d Cir. 1976).

## IV. MOTION TO DISMISS UNDER RULE 12(B)(2) AND RULE 12(B)(5) FOR LACK OF PERSONAL JURISDICTION AND INSUFFICIENCY OF SERVICE OF PROCESS

The University asks the Court to dismiss this case under Rules 12(b)(2) and 12(b)(5). Yale argues that this Court lacks a personal jurisdiction over them, and that the service of process was not properly effected on all Defendants. I will address each argument in turn.

### A. Defendants' Jurisdictional Attack Neither Proves Nor Raises Specific Facts, and Must Be Dismissed

As an initial point, Defendants invoke both Federal Rules 12(b)(2) and 12(b)(5) throughout their papers. (DE 27, p. 3). These two rules raise distinct legal points. Rule 12(b)(2) challenges the *basis* for jurisdiction over the person, not the method by which jurisdiction was obtained. See *Santos v. State Farm Fire & Cas. Co.*, 902 F.2d 1092, 1095 (2d Cir. 1990); 5C Wright & Miller, Federal Practice & Procedure § 1351, at 560 (questions of personal jurisdiction go to "whether the controversy or defendant has sufficient contact with the forum to give the court the right to exercise judicial power over defendant"). Service of process is properly challenged under Rule 12(b)(5). Here, Rule 12(b)(2) is inapplicable.

On their face, Yale's papers contest only the service of process, not personal jurisdiction. Defendants present no substantive allegations, specific facts or legal authority to effectively raise the issue of personal jurisdiction. See *2 Moore's Federal Practice – Civil* § 12.31 (2020) ("[E]ven if the caption or heading of the motion mentions Rule 12(b)(2) or the issue of personal jurisdiction, that is insufficient when the body of the motion fails to address it"). Because Defendants have failed to present the specific details of their jurisdictional challenge, the Court should construe Defendant's motions pursuant to Rules 12(b)(2) and (5) as merely being asserted under Rule 12(b)(5). See *Pimentel v. Atrium Hosp. LP*, No. 3:19cv1284 (JCH), at *4 n.1 (D. Conn. Sep. 8, 2020); *Koulkina v. City of New York*, 559 F.Supp.2d 300, 310 n. 9 (S.D.N.Y. 2008).

**B.  <u>Yale Defendants Failed to Rebut the Presumption of Effective Service</u>**

Defendants assert that they were not served with process. Plaintiff submitted sworn declarations of service, specifically identifying how and when each defendant was, in fact, served. (DE 25). These declarations make a *prima facie* case of effective service. To effectively raise a Rule 12(b)(5) objection and rebut the initial presumption of effective service, Yale Defendants must "point out in what manner the plaintiff has failed to satisfy the requirements of the service provision utilized", *Koulkina*, 559 F. Supp. 2d at 312, and present any factual objections in a supporting affidavit. *Griffin-Nolan*, 2005 WL 1460424, at *3. Here, defendants failed to present sufficient evidence, or any evidence, to rebut that initial presumption.

Defendants argue that service on Yale University was ineffective because "plaintiff's attempt to serve the corporate defendants ... does not comply with [applicable Connecticut] statutes", (DE 27-1, at *6), and that "plaintiff did not serve the individual defendants in compliance with either [Federal] Rule 4(e)(1) or (2)". (Id., at *8). But the attached acknowledgements of service show precisely how each defendant was served. (DE 25). They include a proof of delivery on each defendant, whose validity is not in dispute. To raise a successful 12(b)(5) challenge, Defendants cannot simply deny service, as they do here, when declarations on the record demonstrate proper service. Their unsubstantiated statements are nothing more than "bare allegations", which are insufficient to rebut the initial presumption. *Sassower*, 1993 WL 378862, at *7.

Notably, Defendants devote no time to discuss who bears the burden of proof on this motion. Instead, they rely on *Dickerson v. Napolitano*, 604 F.3d 732 (2d Cir. 2010),

for the proposition that "[t]he plaintiff bears the burden of proving adequate service" on a motion under Rule 12(b)(5). Yale's reliance on *Dickerson* is inapposite in at least three ways.

<u>First</u>, contrary to defendant's argument, the *Dickerson* court only affirmed the district court's decision to dismiss the complaint not properly served within the 90 days permitted by Rule 4(m) – where plaintiffs made no reasonable effort to effect timely service, and failed to request an extension of time to do so. The burden of proof on a 12(b)(5) motion was not an issue in *Dickerson*. There, the parties stipulated that service was inadequate. Here, defendants raise a factual dispute. They claim that service was not performed at all. These two sets of facts are not even remotely related.

<u>Second</u>, the *Dickerson* court neither held not analyzed who bears the burden on a 12(b)(5) motion. Instead, the *Dickerson* court merely cited *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005) verbatim. There, the Second Circuit held that on a motion to vacate a default judgment based on improper service of process, the *defendant* bears the burden of proof to establish that the purported service did not occur. *Burda* is not directly applicable here – the instant case has yet to see a default judgment[1]. But if anything, the reasoning in *Burda* militates against the present defendants, and requires the challenging party to put forth sufficient evidence to dispute service.

A number of cases cited in *Burda* directly supports this conclusion. In *CSC Holdings, Inc. v. Fung*, 349 F. Supp. 2d 613, 616 (E.D.N.Y. 2004), the court applied

---

[1] Despite the oft-repeated citations to *Burda*, the *Burda* court did not analyze who bears the burden on a 12(b)(5) stage, nor noted in *dicta* the burden lies with the plaintiff.

New York law to hold that affidavits not based on personal knowledge create no issue of fact as to whether service was, in fact, effective. Such defective affidavits did not even warrant an evidentiary hearing. Absent facts to the contrary, the court denied the 12(b)(f) challenge. Here, Defendants fail to offer even defective affidavits. Accordingly, they cannot argue that service, as a matter of fact, was ineffective.

Third, corporate Defendants obviously could not, and do not, contest that they had actual notice of the lawsuit. They filed an appearance before their answer was due (DE 12); opposed a preliminary discovery motion (DE 21); and now move to strike a portion of the complaint. As one court in this Circuit acknowledged, "[a] defendant with notice of the proceedings bears the burden of establishing the claim that service was not properly effected". *CSC Holdings, Inc.,* supra. Another judge in this Circuit noted in a similar context:

> "[T]he Federal Rules do not suggest that a defendant may halfway appear in a case, giving plaintiff and the court the impression that he has been served, and at the appropriate time, pull failure of service out of a hat like a rabbit[]. To countenance this train of events would elevate formality over substance and would lead plaintiffs to waste time, money, and judicial resources pursuing a cause of action.

*Adidas Spoerschuhfabriken Adi Dassler Stiftung & Co., K.G. v. Cheung,* 1990 WL 48063, at *5 (S.D.N.Y. Apr. 10, 1990), citing *Broadcast Music, Inc. v. M.T.S. Enterprises,* 811 F.2d 278, 282 (5th Cir. 1987). But this is precisely what Defendants do here; that is, accept *and* evade process at the same time. This is not enough to raise a 12(b)(5) challenge in the first place. Otherwise, any defendant would claim that they were not served only to gain additional time awaiting the court's ruling on the motion. This Court

should not countenance this illogical course of action, and follow the analysis applied by the sister District in *Adidas* above.

### C.  Defendants Were Properly Served

Even under the more demanding plaintiff-bears-the-burden standard, Defendants' argument fails because they *were* properly and timely served with process, as required by Federal Rule 4.

### a.  <u>All Individual Defendants Were Properly Served</u>

Under Rule 4(e), an individual may be served with process in one of four ways: (1) by following the state law where the district court is located or where service is made; (2) by delivering a copy of the summons and of the complaint to the individual personally; (3) by "leaving a copy of each at the individual's dwelling or usual place of abode"; or (4) by "delivering a copy of each to an agent authorized by appointment or by law to receive service of process". Fed. R. Civ. P. 4(e). Applicable Connecticut law provides that "process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state." Conn. Gen. Stat. § 52-57(a).

Here, all individual defendants were served with process either personally or by leaving a copy of the complaint and summons at their usual place of abode. This is clear from the attached declarations of service (DE 25), whose veracity defendants do not dispute. Indeed, Defendants do not argue that individual defendants were not served at their "dwelling or usual place of abode". (DE 25, at *1; DE 25-1, at *1; DE 25-2, at *1-

2; DE 25-3, at *1). This presented declarations are sufficient to satisfy the requirements under Rule 4(e)(2)(B). Individual defendants could claim that somehow, they were not served. Their sworn affirmation to this effect might raise an issue of fact as to whether service was, in fact, effective. But Defendants offer nothing to create such issue of fact. Defendants' challenge must be appropriately dismissed.

Defendants suggest that service be certified mail is somehow "improper". This argument should be rejected. Service in this case, whether by mail or not, was personal within the meaning of Rule 4(e)(2)(A) – that is, the initiating papers were delivered to the person identified in the summons. Whether this was accomplished by a traditional process server, which Rule 4 does not explicitly provide for in any case, or a postal contractor is irrelevant. What matters is whether defendants were served by a person "who is at least 18 years old and not a party may serve a summons and complaint". Fed. R. Civ. P. 4(c)(2). This presumption of effective service attaches to the proofs of service, which specify who, when and where was served. (DE 25). Defendants do not dispute these facts.

Defendants also contend that they wished to fill the waiver of service form. (DE 27-1). "Plaintiff is familiar with the … form," they write. [sic] (Id.) First, a party is under no obligation to waive service of process where defendant so pleases. A defendant is not automatically entitled to waive service – and thus benefit from the extended time to answer the complaint (21 days v. 60 days). Defendants point to no authority that reached this illogical conclusion. At least one court in this Circuit reached the opposite conclusion. *Sibley v. Jamestown Bd. of Pub. Utilities*, 11-CV-01043, at *6 (W.D.N.Y. Sep. 19, 2012) (nothing that "[p]laintiff's counsel … had no obligation to accept Defendants' offer to waive service."). If anything, defendants are obligated to waive

service when requested. See *Klinker v. Furdiga*, No. 5:12-cv-254, at *8 (D. Vt. Apr. 19, 2013) ("Defendants were obligated under Rule 4(d)(2) to waive service"). Should they need additional time, defendants may simply request an appropriate extension from the Court. Plaintiff would not oppose it. But defendants are not entitled to request that service be waived once it was performed.

Defendants also cite a body of cases which share one common fact: namely, that plaintiff proceeded *pro se*. Here, it does not matter whether a party proceeds with or without assistance of counsel. It matters whether the service, as evidenced on the record, was effective. This Court should squarely decline Defendants' invitation to categorize this case as somehow different because plaintiff chose to be his own counsel.

### b.  <u>All Corporate Defendants Were Properly Served</u>

As for the corporate defendants, which clearly had notice of this suit, the entirety of the record demonstrates that no facts are in dispute. At no points do defendants dispute that Yale University's Office of General Counsel accepted service of process on behalf of Yale University on September 2, 2020 at approximately 1:47 pm. (DE 25-2, at *1-2). In fact, an employee at that location signed a proof of delivery, which was later filed with the court. (Id., at *4). Defendants also do not dispute that their Office of General Counsel qualifies as an officer of Yale University "authorized to receive service of process". These facts alone demonstrate that the requirements set forth in Rule 4(h)(1)(B) have been satisfied.

Again, the attached declarations of service create a rebuttable presumption that service was effective. To disturb that presumption, defendants must present sworn

declarations or affidavits that set forth specific facts as to how service was *not* performed. They fail to do so here. The University's generalized allegations that they were not served, or that their counsel "learned of the plaintiff's complaint while accessing PACER in connection with [another case]" are just that: unverified allegations. Unlike at the 12(b)(6) stage, where the court must assume the well-pled facts to be true, at the 12(b)(5) motion the court looks at evidence. An artfully constructed narrative included in a memorandum of law, where defendants introduce new facts absent a sworn proof, is *not* evidence.

## V.   DEFENDANTS' "SHOTGUN" ON A MOTION TO STRIKE UNDER RULE 12(F) APPROACH FAILS

Defendants ask the Court to strike "Paragraphs 41 through 50" and "[a] portion of Paragraph 56" under Rule 12(f). (DE 27-1, at *11). Yale contends that these allegations are immaterial to this action, and their purpose is to "engender a bias against Yale University". (Id). The disputed paragraphs describe the historical context for University's scheme: when it commenced (Am. Compl. ¶ 56), why nobody would listen (Id. ¶¶ 44, 47), how Yale explained away its conduct (Id. ¶¶ 49-50), and how students have unsuccessfully demanded an action from the University for years (Id. ¶ 48). Defendants contend this case is limited to "the disclosure of [plaintiff's] medical records in another action". (DE 27-1, at *11). They authoritatively conclude, referencing no legal authority, that "evidence concerning another student[] … would not be admissible [at trial]". (Id.)

The Court should swiftly reject Defendants' motion. The University presented no reason, let alone a "strong reason", why this Court should depart from a long-standing precedent and "tamper with the pleadings". *Lipsky*, 551 F.2d at 893. Further, the University does not, and cannot satisfy any element of the three-prong *Roe* standard that the Second Circuit courts apply to 12(f) motions to strike. Defendants' motion is merely a dilatory tactic to delay answering the specific allegations in the complaint, and avoid a confrontation with the merits of this case.

To secure the relief they seek, Yale Defendants must demonstrate that (1) the allegations they seek to have stricken have "no bearing on the issues in this case"; that (2) no evidence in support of these allegations would be admissible, and that (3) permitting these allegations to stand would prejudice the Defendants. *Roe v. City of New York*, 151 F.Supp.2d at 510. Yale's burden is a heavy one, and will not be granted unless "no evidence in support of the allegation would be admissible". See *Lipsky*, 551 F. 2d at 893. Defendants do not satisfy either prong of the *Roe* test.

<u>First</u>, defendants fail to demonstrate that the allegedly scandalous matter has no bearing on the present case. This case alleges, *inter alia*, that Yale University willfully and knowingly made false representations to its students, including the present plaintiff, about the confidentiality of its mental health services over a five-year period. (¶¶ 49-50). On their face, the allegations in question are relevant to plaintiff's claims of fraud. Defendants' convictions that plaintiff's claims are solely "based on the disclosure to defense counsel in [another case]" (DE 27-1 at *11) are irrelevant here.

Defendants conveniently neglect to address any substantive claims against them. The University effectively thus abandoned its argument, which must fail.

Second, the University writes that "[t]here is no reason to believe that this information will be admissible at trial". In other words, Yale simply states that it – that is, Yale – is not convinced that the alleged "information" might be admissible. It need not be. Whether evidence is, or would be, admissible does not depend on this defendants' personal contentions. The University's wishes are insufficient to form a successful argument, or any argument, on a 12(f) motion. Reciting an element of the *Roe* standard almost verbatim, without any factual amplification, offers nothing in a way of argument. This "shotgun" approach will not do.

To meet its burden of proof under *Roe*, the University would have to *demonstrate* that no evidence in support of the challenged allegations would be admissible at trial. But Defendants' subjective beliefs that somehow metaphorically "there is no reason to believe" that supporting evidence will be admissible is speculative and cannot satisfy the heavy burden required from a party moving to strike. *Impulsive Music*, 2008 WL 4998474, at *2 (defendants must show how the challenge matter is irrelevant and prejudicial to avoid the motion being denied). The University does not even attempt to invoke the relevant Federal Rule of Evidence to show, however unpersuasively, that evidence in support of disputed allegations might be inadmissible. Therefore, Yale failed to satisfy the second prong of the *Roe* test.

Perhaps inadvertently, defendants refer to the *allegations* in the complaint as potentially not admissible at trial, not the evidence. (DE 27-1, at *11) ("[t]here is no

reason to believe that this *information* will be admissible at trial"). In our system of civil litigation, it is evidence that might be admissible or inadmissible, not allegations. In fact, Yale makes no statement at all about evidence, as the test requires them to do.

Third, defendants assert that the disputed allegations were only put forward "to engender a bias against Yale University". (DE 27-1, at *12). Defendants do not explain what the purported bias is, and offer nothing but silence to show specifically how the allegations it now challenges are prejudicial. Accordingly, they failed "to show that permitting the allegations to stand would result in prejudice". *Torre v. Charter Commc'ns, Inc.*, No. 19cv5708 (JMF), at *16 (S.D.N.Y. Oct. 8, 2020), citing *Roe v. City of New York*, 151 F. Supp. 2d at 510 (internal quotation marks omitted).

One more point here. Plaintiff agrees that the allegations in paragraphs 44 through 49 describe scandalous *conduct*. The problem, however, is not with the pleadings, which merely seek to bring Yale's unconscionable scheme to light. The problem is with the underlying conduct, which the University must slowly address with a straight face.

## VI.   CONCLUSION

Defendants' thinly-argued motion is nothing more than a half-hearted effort to "buy time" and distance itself from the merits. In furtherance of its goal, Yale tries to accept and evade service at the same time. Yale cannot have it both ways. For the reasons stated above, I respectfully request that the court deny defendants' applications, and direct all defendants to file an answer within 14 days.

Dated:  October 27, 2020            Respectfully submitted,
         New York, NY               By: /s/ Jakub Madej_____
                                        Jakub J. Madej
                                        THE LAWSHEET CORPORATION
                                        415 Boston Post Rd Ste 3-1102
                                        Milford, CT 06460
                                        T: (203) 928-8486
                                        F: (203) 902-0070
                                        E: j.madej@lawsheet.com

TABLE OF AUTHORITIES

**Cases**

*Adidas Spoerschuhfabriken Adi Dassler Stiftung & Co., K.G. v. Cheung,*
  1990 WL 48063 (S.D.N.Y. Apr. 10, 1990) ........................................ 11

*Burda Media, Inc. v. Viertel,*
  417 F.3d 292 (2d Cir. 2005) ................................................... 10

*CSC Holdings, Inc. v. Fung,*
  349 F. Supp. 2d 613 (E.D.N.Y. 2004) ......................................... 10

*Defendants. Roe v. City of New York*
  Roe v. City of New York, 151 F.Supp.2d ................................... 16, 18

*Griffin–Nolan v. Providence Washington Ins. Co.,*
  2005 WL 1460424 (N.D.N.Y. 2005) ........................................ 5, 6, 9

*Howard Johnson Int'l, Inc. v. Wang,*
  7 F. Supp. 2d 336 (S.D.N.Y. 1998) ............................................ 4

*Impulsive Music v. Pomodoro Grill, Inc.,*
  2008 WL 4998474 (W.D.N.Y. Nov. 19, 2008) ................................. 7, 17

*King v. Best Western Country Inn,*
  138 F.R.D. 39 (S.D.N.Y. 1991) ................................................ 6

*Koulkina v. City of New York,*
  559 F. Supp. 2d 300 (S.D.N.Y. 2008) ....................................... 5, 8, 9

*Nolan v. City of Yonkers,*
  168 F.R.D. 140 (S.D.N.Y. 1996) ............................................... 5

*Old Republic Ins. Co. V. Pac. Fin. Servs. of Am., Inc.,*
  301 F.3d 54 (2d Cir. 2002) .................................................... 4
Dickerson v. Napolitano,
  604 F.3d 732 (2d Cir. 2010) .................................................. 9

*Peia v. U.S. Bankr. Courts,*
  2001 WL 789201 (D. Conn. May 22, 2001) ...................................... 4

*People of State of New York ex rel. Spitzer v. Operation Rescue Nat.,*

69 F. Supp. 2d 408 (W.D.N.Y. 1999) ................................................... 3-4, 4

*Reynolds Corp. v. National Operator Services, Inc.*,
    208 F.R.D. 50 (W.D.N.Y. 2002) ..................................................... 4

*Santos v. State Farm Fire & Cas. Co.*,
    902 F.2d 1092 (2d Cir. 1990) ...................................................... 8

*Sassower v. City of White Plains*,
    1993 WL 378862 (S.D.N.Y. Sept. 24, 1993) ................................. 5, 6, 9

*Simons v. Yale Univ.*,
    2020 WL 5816950 (D. Conn. Sept. 30, 2020) ............................... 7

*Taylor v. Norwalk Cmty. Coll.*,
    2015 WL 5684033 (D. Conn. Sept. 28, 2015) ............................... 4

*Tucker v. Am. Int'l Grp., Inc.*,
    936 F. Supp. 2d 1 (D. Conn. 2013) ........................................... 6, 7

*United States v. Jost*,
    9 F. Supp. 3d 303 (W.D.N.Y. 2014) ........................................... 5

*Waste Mgmt. Holdings, Inc. v. Gilmore*,
    252 F.3d 316 (4th Cir. 2001) ................................................... 6

**Statutes and Rules**

28 U.S.C. § 2201 ....................................................................... 2
Conn. Gen. Stat. § 52-57 ............................................................. 12
Fed. R. Civ. P. 4 ............................................................. 3, 4, 12, 13
Fed. R. Civ. P. 12 ................................................................. 3, 6, 8
Fed. R. Civ. P. 15 ...................................................................... 3

**Other Authorities**

*2 Moore's Federal Practice – Civil* § 12.31 (2020) ........................... 8
5C Wright & Miller, Federal Practice & Procedure § 1351 ................... 8
5C Wright & Miller, Federal Practice & Procedure § 1353 ................... 5
5C Wright & Miller, Federal Practice & Procedure § 1380 ................... 6